# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alfonso Percy Pew,             :
            Appellant       :
                              :
          v.                 :    No. 530 C.D. 2020
                              :    Submitted: September 3, 2021
Lt. John Doe, et al.            :

**BEFORE:**     **HONORABLE RENÉE COHN JUBELIRER,** Judge[1]
                 **HONORABLE MICHAEL H. WOJCIK,** Judge
                 **HONORABLE, BONNIE BRIGANCE LEADBETTER,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**               **FILED: March 14, 2022**

Alfonso Percy Pew (Pew), pro se, appeals the April 21, 2020 Order of the Court of Common Pleas of Clearfield County (trial court) sustaining the preliminary objections (POs) of numerous employees, including John and Jane Does, of the Department of Corrections (DOC) at the State Correctional Institutions (SCI) at Houtzdale (SCI-Houtzdale) and at Rockview (SCI-Rockview), as well as Secretary of Corrections John E. Wetzel, other statewide DOC officials, and Governor Tom Wolf (collectively, Defendants), and dismissing Pew's pro se "Supplemental Complaint."[2] Pew argues that the trial court erred in sustaining the POs and dismissing his litigation, citing service and procedural issues, and legal errors in the trial court's treatment of Pew's pleadings and the trial court's conclusions that,

---

[1] This case was reassigned to the opinion writer on January 4, 2022, which was before January 7, 2022, when Judge Cohn Jubelirer became President Judge.

[2] DOC was not named a defendant. Pew further named various third parties that provided medical, food, telecommunications, and mail services at SCI-Rockview in the Supplemental Complaint.

among other things, Pew failed to properly serve Defendants and that Defendants were entitled to sovereign immunity for claims raised under 42 U.S.C. § 1983 (Section 1983) (relating to violations of civil rights). Because our review of the record in this matter reveals confusion regarding what complaints and claims were before the trial court and what documents were served or not served, both of which hindered the parties' ability to respond to the pleadings, we vacate the trial court's Order and remand for further proceedings.

## I.    BACKGROUND

### A. The Complaints and Filings

On May 29, 2018, Pew filed a Civil Complaint (Original Complaint) with the trial court, naming 24 defendants, including John and Jane Does, who were statewide officials of or employed by DOC at SCI-Houtzdale, Governor Wolf, and the company that provides medical care at the prison. The Original Complaint, brought pursuant to Section 1983, averred violations of Pew's constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution[3] arising from Pew's incarceration at SCI-Houtzdale. (Original Record (O.R.) Item 2.) Pew further asserted that his rights under various sections of article I of the Pennsylvania Constitution were violated.[4] Finally, Pew alleged violations of his rights under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA),[5] the Religious Freedom Protection Act (RFPA),[6] and the Americans with Disabilities Act of 1990.[7]

---

[3] U.S. CONST. amends. I, IV, V, VIII, and XIV.

[4] PA. CONST. art. I.

[5] 42 U.S.C. §§ 2000cc-2000cc-5.

[6] Act of December 9, 2002, P.L. 1701, 71 P.S. §§ 2401-2408.

[7] 42 U.S.C. §§ 12101-12213.

2

Sometime prior to August 2018, Pew was transferred from SCI-Houtzdale to SCI-Rockview, which is located in Centre County. Pew filed a "Motion to Commence Lawsuit and Motion for Order of Sheriff's Office to Serve the [Original] Complaint on John Doe Lt[.] et al[.] at SCI[-]Houtzdale," which the trial court received on September 13, 2018. (*Id.*, Item 5.) The trial court, on September 14, 2018, directed the Clearfield County Prothonotary (Prothonotary) to transfer the Original Complaint to the Court of Common Pleas of Centre County (Centre County Court). (*Id.*, Item 6.) After a hearing before the Centre County Court, the matter was returned to the trial court because the alleged wrongful acts happened at SCI-Houtzdale in Clearfield County. (Trial Court Opinion (Op.) at 1, O.R. Item 40.) The trial court never ruled on the September 2018 motions, one of which sought to have the Sheriff serve the Original Complaint.

On March 27, 2019, the trial court received a Motion to File a Supplemental Complaint, in which Pew claimed that his transfer to SCI-Rockview had been retaliatory and sought to add claims arising from his time at SCI-Rockview. (*Id.*, Item 8.) The trial court denied this motion, noting and ordering as follows:

1. Despite [Pew's] Complaint being filed on May 29, 2018[, Pew] has never had the Complaint properly served on the Defendants by the Sheriff;

2. [Pew] has made it a practice to file various motions and apparently never provides certified copies or any copies to [DOC;]

3. The Court is unwilling to take any further steps in this case until [Pew] properly, pursuant to the Rules of Civil Procedure, serves . . . DOC[ and ;]

4. Once [] DOC is properly served and responds with a pleading or other legal document [Pew,] if he so wishes, can file a Motion to File an Amended Complaint.

3

(*Id.*, Item 9.) After filing a motion for clarification regarding whether he was permitted to serve Defendants by certified mail and, if not, a request that the trial court order the Sheriff to serve the Original Complaint, which the trial court denied, Pew filed a Praecipe to Reinstate the Complaint on May 16, 2019, and paid the required service fee. (*Id.*, Items 12-16.) Per a June 4, 2019, Sheriff's Return, the Original Complaint was served at SCI-Houtzdale by handing it to a SCI-Houtzdale employee. (*Id.*, Item 17.)

On July 22, 2019, Defendants, through counsel (Counsel) from the Pennsylvania Office of Attorney General (OAG), filed a Motion for an Extension to Respond to the Complaint, which the certificate of service indicated was served on Pew at SCI-Rockview. (*Id.*, Item 18.) The trial court granted the requested relief by order dated July 23, 2019, giving Defendants until August 23, 2019, to respond. (*Id.*, Item 19.) Pew filed, on July 30, 2019, a second Motion to file a Supplemental Complaint and a response to Defendants' previously granted extension request, which included a proof of service on Defendants' Counsel. (*Id.*, Item 21.) The trial court construed the motion as a "Motion to File an Amended Complaint," and, by order dated July 29, 2019, granted the Motion, authorized service to Defendants' Counsel by regular mail by August 15, 2019, and gave Defendants until October 14, 2019, to file an answer or otherwise respond. (*Id.*, Item 22.)

Pew filed a Supplemental Complaint on August 7, 2019, and a proof of service indicating that the Supplemental Complaint was served by First-Class Mail on Defendants' Counsel, the Prothonotary, and DOC. (*Id.*, Items 23-24.) In the Supplemental Complaint's jurisdictional statement, Pew explained that it was "a 'Supplemental Jurisdiction' Complaint under [Section] 1983" over which the trial court had jurisdiction because the claims were "so related to the claims in the action

4

within [the trial court's] original jurisdiction that they form part of the same case or controversy . . . ." (Supplemental Complaint (Suppl. Compl.) at 3.) Pew maintained that the trial court already had jurisdiction over the claims arising from his treatment at SCI-Houtzdale and that the Supplemental Complaint was adding alleged violations of his constitutional rights at SCI-Rockview that had arisen since his transfer, which the trial court could also review.

Between the Original Complaint and Supplemental Complaint, Pew averred numerous violations of Pew's constitutional and statutory rights, including the following.[8] Pew's religion has dietary, grooming, and clothing restrictions, as well as ceremonial worship needs, for which he had sought accommodations from both SCI-Houtzdale and SCI-Rockview. (Original Complaint (Orig. Compl.) ¶¶ 38-46; Suppl. Compl. ¶¶ 1-6.) Those accommodations were either granted and then stopped (SCI-Houtzdale) or denied outright (SCI-Rockview), while other religions' restrictions were accommodated, resulting in discrimination between the religions. (Orig. Compl. ¶¶ 40-41, 46-47; Suppl. Compl. ¶¶ 7-9, 11.) The failure to provide these accommodations has resulted in Pew being unable to practice his religious faith in violation of his constitutional and statutory rights, as well as causing physical damage to his health. (Orig. Compl. ¶¶ 42, 47-49, 63-64; Suppl. Compl. ¶ 3 & 3-4.) Pew alleged violations of his constitutional rights through the prohibitions against his receiving various publications and books, which affected his mental health, and refusals to compensate Pew for the rejected materials. (Orig. Compl. ¶¶ 32-37, 61-62; Suppl. Compl. ¶¶ 14-17 & 4-5.) Pew averred that he was denied adequate medical and dental care because he was not provided treatment for mental

---

[8] Unless otherwise noted, the allegations were made about both SCI-Houtzdale and SCI-Rockview.

5

and physical health issues, as well as fixtures for some of Pew's teeth. (Orig. Compl. ¶¶ 50-52, 55-60; Suppl. Compl. ¶¶ 44-45 & 15.)

As to SCI-Houtzdale, Pew averred that he, but not other inmates, was deprived of showers following gym sessions, which resulted in his becoming infected, and reinfected, with scabies, as well as having to suffer unhygienic conditions. (Orig. Compl. ¶¶ 28-31.) He further alleged he was held in a "torture cell" or "P.O.C.[9] camera cell" that lacked the furnishing that other cells had, was denied exercise that was needed to treat his hypertension, was forced to wear used clothing, and was being improperly housed for extensive periods of time in solitary confinement, which was inconsistent with Pew's mental health classification. (*Id.* ¶¶ 65, 68-75.)

As to SCI-Rockview, Pew alleged that the presence of asbestos in certain units was fraudulently concealed and that a data breach occurred in April 2018, in which sensitive data like social security numbers and personal financial information was disclosed, without Pew being advised of the data breach. (Suppl. Compl. ¶¶ 36-38 & 12-13.) Pew averred that the practices of blocking his outgoing mail, particularly those which related to his inmate complaints, and opening mail outside Pew's presence, photocopying, seizing, and then, after a period of time, destroying Pew's original legal mail and non-legal mail, as well as excessively delaying delivery of mail, losing mail, and failing to place time and date stamps on incoming mail, violates his constitutional rights. (*Id.* ¶¶ 18-20, 23-35 & 7, 10-12.) Finally, Pew maintained that the vendor responsible for supplying the commissary was not complying with its contract because the commissary is not adequately stocked with many items, such as medical supplies like "Halls," which Pew claimed to need when he is ill. (*Id.* ¶¶ 39-43 & 13-14.)

---

[9] There is no indication in the record what "P.O.C." represents.

In addition, Pew pleaded that he had exhausted his administrative remedies and attached Grievance Forms to both the Original Complaint and Supplemental Complaint. For these violations, Pew requested declaratory judgment, injunctive relief, and various forms of money damages.

Although given until October 14, 2019, to respond, Defendants did not file any responsive pleading by that date. Thereafter, Pew signed a "Certification that a Written Notice of Intention to File the Praecipe for Entry of Judgment for Failure to Plead," which was mailed to the trial court on November 14, 2019. (O.R. Item 30.) Pew also mailed two Notices of Praecipe to Enter Judgment by Default on, respectively, November 14, 2019, and November 25, 2019, seeking that judgment be entered on the Original and Supplemental Complaints based on Defendants' failure to timely file a responsive pleading. (*Id.*, Items 28-29.) All three documents were signed by Pew, used the caption for this matter, and included proofs of service on Defendants' Counsel, but the envelopes themselves used the name of another inmate at SCI-Rockview for the return address. (*Id.*, Items 28-30.) Per the docket and date stamps on the documents, they were marked as received by the trial court on December 23, 2019. (*Id.*)

Defendants filed a Motion for Extension of Time to Respond to the Amended Complaint (Motion for Extension), dated December 4, 2019, which was marked filed on December 11, 2019. (*Id.*, Item 25.) Per the certificate of service, the Motion for Extension was mailed to Pew at SCI-Houtzdale. (*Id.*) The impetus for this filing was an inquiry, prompted by the trial court, from the Court Administrator to DOC's legal department regarding the receipt of the Supplemental Complaint, which Defendants' Counsel denied receiving. (Trial Court's Order, December 17, 2019 ¶¶ 7-8, O.R. Item 27.) The trial court set the inquiry in motion because it appeared

7

to the trial court that Pew's November 2019 Default Judgment documents had been sent to the trial court directly by an inmate at "SCI Benner,"[10] and not Pew, which the trial court found "unusual." (*Id.* ¶¶ 3, 5.) The trial court then reviewed the record, and observing that those documents had not been filed by the Prothonotary and that no POs had been filed, "believe[ed] something was amiss." (*Id.* ¶¶ 6-7.) The Court Administrator then sent a copy of the Supplemental Complaint to Counsel. (*Id.* ¶ 7.) The trial court, by order dated December 17, 2019, granted the Motion for Extension, gave Defendants 60 days to file POs, and indicated that no default judgment would be entered and those documents would be filed for appellate purposes only. (*Id.* ¶¶ 10-11.)

Pew filed objections to the trial court's December 17, 2019 order, along with a memorandum of law in support, on January 14, 2020. (O.R. Items 31-32.) Therein, Pew argued he never received Defendants' Motion for Extension, which had been granted in the December 17, 2019 order, and reiterated his entitlement to a default judgment. (*Id.*, Item 31.) Pew attached cash slips showing monies deducted from his inmate account to mail the Supplemental Complaint to Defendants' Counsel, the Prothonotary, and DOC. (*Id.*, Item 32.) The trial court dismissed these objections on February 3, 2020. (*Id.*, Item 33.)

Despite the 60-day deadline set forth in the December 17, 2019 order, which required the filing of the POs by February 18, 2020, Defendants filed their POs to the "Amended Complaint" on March 30, 2020. (*Id.*, Item 34.) Although Pew is listed as a "CC:" recipient on a cover letter for the POs, there was no specific address noted for him or certificate of service attached thereto. (*Id.*) Defendants asserted that the "Amended Complaint" should be dismissed with prejudice because Pew

---

[10] The return address used was 1 Rockview Place, P.O. Box A, Bellefonte, PA 16823, which is the address for SCI-Rockview.

8

failed to properly serve OAG as required by Section 8523(b) of the Judicial Code, 42 Pa.C.S. § 8523(b), and Pennsylvania Rule of Civil Procedure 422(a), Pa.R.Civ.P. 422(a).[11]  Defendants argued that they were immune from suit because Pew failed to aver that the acts complained of fell within one of the exceptions to sovereign immunity as set forth in Section 8522 of the Sovereign Immunity Act, 42 Pa.C.S. § 8522.[12]  Finally, they asserted that "the crux of [Pew's] claims was broad and baseless."  (POs ¶ 10.)

Pew filed no response to the POs. Instead, on April 7 and 8, 2020, Pew mailed various motions, seeking default judgment and sanctions, claiming not to have received any response to the Original and Supplemental Complaints from Defendants, including any POs that had been due in February 2020.  (O.R. Items 35-

---

[11] Section 8523(b) of the Judicial Code provides that "[s]ervice of process in the case of an action against the Commonwealth shall be made at the principal or local office of the Commonwealth agency that is being sued and at the office of the Attorney General."  42 Pa.C.S. § 8523(b).  Rule 422(a) states that

> [s]ervice of original process upon the Commonwealth or an officer of the Commonwealth, or a department, board, commission or instrumentality of the Commonwealth, or a member thereof, shall be made at the office of the defendant and the office of the attorney general by handing a copy to the person in charge thereof.

Pa.R.Civ.P. 422(a).

[12] Pursuant to Section 8522(a) of what is commonly known as the Sovereign Immunity Act, the General Assembly waived sovereign immunity "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury [was] caused by a person not having available the defense of sovereign immunity" where one of the exceptions to subsection (b) applies.  42 Pa.C.S. § 8522(a).  Section 8522(b) provides that "[t]he following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised for damages caused by:"  (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse.  42 Pa.C.S. § 8522(b).

9

36.) The trial court denied these motions on April 15, 2020, because, the trial court reasoned, Defendants were not required to file anything pending the trial court's disposition of their POs. (*Id.*, Item 37.) On April 14, 2020, Pew mailed a Motion for Injunctive Protection Order, which was docketed on, and denied by, the trial court on April 20, 2020. (*Id.*, Items 38-39.) On April 20, 2020, Pew filed an affidavit indicating he had not received Defendants' Motion for Extension or the POs at SCI-Rockview. (*Id.*, Item 41.) This affidavit was stamped received by the trial court on April 24, 2020.

*B. The Trial Court's Opinion and Pew's Responses*

On April 21, 2020, the trial court issued an opinion and order (Opinion), sustaining Defendants' POs and dismissing the Supplemental Complaint with prejudice. Throughout the Opinion, the trial court referred to Pew's second pleading as both an "Amended Complaint" and a "Supplemental Complaint" and generally referenced allegations from both the Original Complaint and Supplemental Complaint. The trial court summarized Pew's Complaints as alleging that: "he was denied showers; denied publications; denied new, never worn under[]garments; denied homeopathic medicine; denied medical treatment; denied religious accommodations; and denied vegan meals." (Trial Court Op. at 1-2.) The trial court further stated that Pew alleged: "exposure to asbestos; being held in a torture cell for two days;[13] not having items in stock at the commissary; and lost, slow, and disorganized mail." (*Id.* at 2.)

---

[13] The trial court concluded that the "torture cell" was Pew's characterization of his housing in the Diversionary Treatment Unit, a psychological observation cell, where Pew was temporarily held due to his mental health. (Trial Court Op. at 5.)

10

Turning to the POs, the trial court ruled as follows. On the issue of service, the trial court found that Pew failed to serve OAG as required because the action was filed against a "Commonwealth Party," which, pursuant to Section 8501 of the Judicial Code, 42 Pa.C.S. § 8501, includes DOC and its employees when they act within the scope of their employment.[14] (*Id.*) The trial court held that "[t]he [O]riginal [C]omplaint filed by [Pew] was served by the Sheriff's Office on SCI-Houtzdale, even though it was not a party to the action," "[n]one of the [24] defendants seem to have been served the [O]riginal [C]omplaint, and no proof of service was provided," and that the Original Complaint "was never served on the [OAG]." (*Id.* at 3.) Further, the trial court pointed out that "[t]he Proof of Service filed by [Pew] for the Supplemental Complaint only listed three individuals, one of which was the Prothonotary's Office, and one being [DOC]," with neither OAG nor any of the individual defendants being served with that complaint. (*Id.*) Therefore, the trial court concluded that Pew failed to comply with the service requirements and sustained this PO. (*Id.* & Order.)

As for the PO based on sovereign immunity, the trial court held that Pew's claims were legally insufficient because the claims against Defendants involved actions within the scope of their employment and, therefore, Pew could only prevail if he established that his claims fell within one of the exceptions to sovereign immunity, and he had not. It further determined that the allegations in the Original Complaint and Supplemental Complaint indicated that the wrongful conduct was intentional, not negligent, which was another reason why sovereign immunity was

---

[14] Section 8501 of the Judicial Code defines "Commonwealth party" as "[a] Commonwealth agency and any employee thereof, but only with respect to an act within the scope of his office or employment." 42 Pa.C.S. § 8501.

11

applicable. Therefore, the trial court found all Defendants immune from suit and sustained this PO. (*Id.* at 4-5 & Order.)

Finally, the trial court addressed Defendants' assertion that all of Pew's claims were "broad and baseless" and, therefore, legally insufficient. (*Id.* at 5.) Reviewing a handful of Pew's allegations, such as the claimed use of a "torture cell" that appeared to be the psychological observation cell and lack of certain furniture, the denial of publications, and failure "to offer certain snacks in the commissary," the trial court agreed with Defendants that these claims were legally insufficient. (*Id.* at 5-6.) The trial court further agreed with Defendants that Pew's other claims, which were like the specifically addressed claims, were "broad and baseless." (*Id.* at 7.) The trial court did not specifically address Pew's claims regarding the refusal to provide religious accommodations, lack of proper medical and dental care, and interference with his mail – particularly his legal mail. Based on sustaining these POs, the trial court held that the "Complaint cannot stand." (*Id.*)

On April 24, 2020, Pew filed a Motion to Vacate and Set Aside Judgment (Motion to Vacate) the April 21, 2020 Order. (O.R. Item 42.) Therein, Pew argued that he never received Defendants' Motion for Extension or the POs and supporting brief, which he claimed were not supported by certificates or other proofs of service. Therefore, Pew asserted, he had no opportunity to respond to the POs. He further argued that proper service of the Original Complaint and Supplemental Complaint was made, as reflected by the proofs of service filed with the Prothonotary. Pew contends that Sheriff's service of the Original Complaint on SCI-Houtzdale employees who were named as Defendants at their place of business was proper and that no service on OAG was necessary because those Defendants were not statewide or Commonwealth employees. According to Pew, service of the Supplemental

12

Complaint by First-Class Mail to Defendants' Counsel was proper and in accordance with the trial court's July 29, 2019 order. Additionally, Pew contended that state sovereign immunity is not available to employees in Section 1983 claims asserting violations of federal constitutional rights, and, therefore, the trial court erred in finding those claims barred. Finally, Pew asserted that his claims were not baseless and that, together, the Original Complaint and Supplemental Complaint set forth valid claims.

Pew also objected to the April 15 and 20, 2020 orders, and sent an "Open Letter on Record to Prothonotary, Judge, Deputy Attorney General" (Open Letter) on April 30, 2020, which were stamped filed on May 8, 2020. (*Id.*, Item 43.) Therein, Pew reiterated that he had not received the Motion for Extension, POs, and supporting brief and there was no evidence of service being made on Pew. In the Open Letter, Pew indicated he had received the POs from the Prothonotary on April 29, 2020, which was the first time he had received the POs, and that neither a brief in support nor a proof of service on Pew were included. (*Id.*)

The trial court considered the Motion to Vacate as a Motion to Reconsider the April 21, 2020 Order sustaining the POs, and noted Pew's other filings. The trial court issued a May 7, 2020 Order stating, in pertinent part:

> E. The Court notes that one of the issues raised by [Pew] is [that] he never received the [POs] filed by . . . Defendants. The Court notes and the record reflects that the [Pew] attempted on several occasions to take a default judgment against the Defendants. Procedural information concerning [Pew's] attempts to take default judgment is set forth in this Court's Order of December 17, 2019.
>
> F. The said Order of December 17, 2019[,] provided [] Defendant[s] . . . with a 60[-]day deadline to file [POs] to [Pew's] Amended Complaint.

13

G.  The 60[-]day deadline . . . would be Saturday, February 15, 2020. As Monday, February 17, 2020[,] was a holiday (Presidents Day)[,] the . . . deadline to file [][POs] was Tuesday, February 18, 2020.  A review of the record indicates that the Defendants' [POs] were actually filed March 30, 2020.  Attached to the [POs] is a letter dated February 4, 2020[,] from [Defendants' Counsel] to . . . [the] Clearfield County Prothonotary.  The Court notes that the [POs] on page 3 were dated February 4, 2020.

H.  The Court is unaware of why the . . . [POs] dated February 4, 2020[,] were filed with the record on March 30, 2020.  The filing stamp indicates "No cc."  This means the Prothonotary did not send certified copies to either [Pew] or [Defendants' Counsel].  However, the Court must assume that [Pew] received a copy of [] Defendants' [POs].

I.  [Pew] was well aware of the 60[-]day deadline for the filing of [] Defendants' [POs].  There is little doubt in the Court's mind that if [Pew] had not received a copy of the [POs] by the deadline of February 18, 2020[,] that subsequent to February 18, 2020[, Pew] would again have attempted to take a default judgment against the Defendants.  As the record indicates, no attempt at taking a default judgment was made between February 18, 2020[,] and March 30, 2020.  As such[,] the Court believes it is perfectly logical to assume that [Pew] did indeed receive a copy of the [POs].

J.  Reference is made [to] paragraphs 1 and 2 of [Pew's] "Open Letter . . . ."  Therein from what the Court presumes was April 29, 2020[, Pew] indicates he never received a copy of [] Defendants' [POs].  The Court notes that a copy of the [POs] [was] sent to [Pew] by the Prothonotary's Office at the direction of this Court, due to [Pew's] continual indications that he had not received a copy of [] Defendants' [POs].  Although the Court, as noted, believes that [Pew] has indeed received a copy of [] Defendants' [POs], an additional copy was mailed to him as a courtesy by the Prothonotary.

(*Id.*, Item 44.)

Pew appealed to this Court, and filed, at the trial court's direction, a Statement of Errors Complained of on Appeal (Statement) pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b).  (*Id.*, Item 48.)  In the Statement, Pew reiterated the arguments he made in his Motion to Vacate, as well as argued

14

that the trial court erred by: treating the Supplemental Complaint as an Amended Complaint; by applying the wrong standard for reviewing the denial of publications; not addressing Pew's other constitutional claims; and failing to acknowledge in its opinion that the Supplemental Complaint's proof of service, in fact, reflected service on Defendants' Counsel. The trial court issued a letter that it would not be filing a responsive opinion. (*Id.*, Item 51.)

## II. DISCUSSION

### A. *Parties' Arguments*

On appeal, Pew argues[15] that the trial court erred in sustaining the POs. In particular, Pew asserts that he was not served with the POs and Motion for Extension, thereby depriving him of the ability to respond to Defendants' claims and due process. Pew also challenges the trial court's dismissal of the litigation based on its conclusion that he inadequately served Defendants, which he asserts was legally incorrect. Pew further argues that the trial court erred in treating the Supplemental Complaint as an Amended Complaint and in applying the doctrine of state sovereign immunity to federal constitutional claims under Section 1983.[16]

Defendants argue that Pew's pleadings, the Original Complaint and Supplemental Complaint, were not properly served. They further assert that the trial

---

[15] Defendants argue that Pew's brief contains no substantive discussion of the merits of his claims and, as such, he has waived his claims on appeal. However, although not artfully drafted, Pew incorporates the arguments set forth in his Statement into his brief by referencing that Statement and attaching the Statement to his brief. (Pew's Brief (Br.) at 1.) Cognizant that "this Court is generally inclined to construe pro se filings liberally," we will not find waiver because "we are able to discern the legal issues raised" through Pew's incorporation of the Statement. *Smithley v. Unemployment Comp. Bd. of Rev.*, 8 A.3d 1027, 1029 n.6 (Pa. Cmwlth. 2010).

[16] Pew makes additional arguments regarding other aspects of the trial court's handling of the underlying litigation and how this Court should have appointed counsel to assist him in this litigation. However, due to our disposition, we do not address these arguments further.

court did not err in treating the Supplemental Complaint as an Amended Complaint, which they contend rendered Pew's Original Complaint "inoperative." (Defendants' Brief (Br.) at 13.) Defendants argue that, even if the alleged procedural and technical defects were not present, Pew's state claims are barred because they are all entitled to sovereign immunity because they are Commonwealth officials and employees. Finally, Defendants assert that the trial court properly dismissed Pew's constitutional claims because, although not specifically addressed by the trial court, the claims are legally insufficient.[17]

*B. Analysis*

Our "review of a trial court's order sustaining preliminary objections and dismissing a complaint is limited to a determination of whether that court abused its discretion or committed an error of law." *Petty v. Hosp. Serv. Ass'n of Ne. Pa.*, 967 A.2d 439, 443 n.7 (Pa. Cmwlth. 2009). In considering preliminary objections, the court must consider as true all well-pleaded relevant and material facts and should only sustain the preliminary objections where they are clear and free from doubt. *McGriff v. Pa. Bd. of Prob. & Parole*, 809 A.2d 455, 458 (Pa. Cmwlth. 2002). This "review raises a question of law as to which our standard of review is *de novo* and our scope of review is plenary." *Petty*, 967 A.2d at 443 n.7.

However, our review in this matter is hindered by its procedural history, which may be best described as a quagmire. Both Pew and Defendants raise issues relating to the confusing procedural history, such as how pleadings and motions were allegedly served or not served, and how various pleadings were characterized by the

---

[17] We note that Defendants' brief to this Court asserts reasons and argument beyond that found in their POs, which was two pages in length and not accompanied by a memorandum of law or any legal argument as to why Pew's claims were legally insufficient beyond that they were "broad and baseless." (O.R. Item 34.)

trial court. Issues regarding service implicate the ability of an opposing party to timely and appropriately respond to a pleading or motion, and issues regarding the characterization of the pleadings implicate what claims must be answered or challenged by preliminary objections.

First, there are questions regarding whether the Original and Supplemental Complaints were properly served on Defendants, DOC, and OAG, thereby potentially hindering Defendants' ability to file POs to both the Original and Supplemental Complaints, if both were implicated. The record shows that Pew had the Sheriff serve the Original Complaint on the SCI-Houtzdale Defendants at their place of employment, which he argues was proper service. However, the record does not appear to indicate that any other service of the Original Complaint was effectuated. As for the Supplemental Complaint, the proof of service indicates that the Supplemental Complaint was served by mailing it to Defendants' Counsel, who is a Deputy Attorney General with OAG, the Prothonotary, and DOC, as it appears was permitted by the trial court's July 29, 2019 order.

The trial court sustained Defendants' PO based on improper service, holding that the Sheriff's service on SCI-Houtzdale was insufficient as to everyone because the institution was not a named defendant. (Trial Court Op. at 3.) While not stating that Pew's litigation was dismissed solely on this basis, it was one of the reasons cited for the trial court's ultimate determination. (*Id.* at 7.) However, the lack of proper service does not justify the dismissal of a complaint, it only requires that proper service be effectuated. *City of Philadelphia v. Berman*, 863 A.2d 156, 160 (Pa. Cmwlth. 2004). Therefore, to the extent service was not proper, all that is required is for Pew to properly serve the relevant pleadings on the Defendants, which he will be required to do on remand.

17

Second, Pew raises service issues regarding Defendants' Motion for Extension and the POs themselves, which he claims never to have received, pointing out that the former was not served on him at SCI-Rockview and the latter did not include a certificate of service. Pew contends that many of Defendants' filings do not include certificates of service that show service on him at SCI-Rockview.[18] Pew argues that because he was not served with those documents, he could not object to the Motion for Extension by establishing that he properly served the Supplemental Complaint (the basis for the extension), or respond to the POs **prior to** the trial court sustaining them and dismissing the matter.

The trial court based its rejection of Pew's assertion that he did not receive the POs on an assumption that Pew received the POs because, if not, he would have filed for default judgment before March 30, 2019, the date the POs were filed. (Trial Court May 7, 2020 Order ¶¶ H-I.) The trial court reasoned that because Pew had sought that relief in the past, he would have done so in this instance. However, while not filed by March 30, 2019, Pew did seek default judgment and other relief in early April 2019, citing Defendants not filing POs or an answer to the Original and Supplemental Complaints. It is unclear why Pew would have filed a request for default judgment, rather than a response to the POs, if he had received the POs. Further, the trial court's own characterization of Pew's prolific filing history could raise an assumption opposite that made by the trial court because it shows that Pew was actively litigating these Complaints. Finally, the POs did not include a

---

[18] A review of Defendants' filings reflect that while three filings included a certificate of service, the POs simply included a cover letter, dated February 4, 2020, that listed Pew as a "CC:" recipient. (O.R. Items 18, 20, 25, 34.) Of those that contained a certificate of service, only the July 2019 Motion for Extension of Time to the Original Complaint used Pew's address at SCI-Rockview, the others, including the Motion for Extension, used SCI-Houtzdale as Pew's address. (*Id.*, Items 18, 20, 25.)

18

certificate of service, only a cover letter listing Pew as a "CC:" recipient, without identifying a specific address for Pew. (O.R. Item 34.) The lack of an address is important because the last document filed by Defendants that contained a certificate of service, the Motion for Extension (which Pew also claimed not to have received), was allegedly served on Pew at SCI-Houtzdale in December 2019, where he was no longer an inmate, despite their having served Pew at SCI-Rockview with their first extension request in July 2019. (*Id.*, Items 20, 25.) The trial court did not appear to consider any of these factors in assuming that Pew had to have received the POs. Upon review, it is not clear to this Court that the record supports the assumption made by the trial court that Pew did receive the POs and did not file a response. Absent service of the POs on Pew, he was not provided the opportunity to respond to the POs and raise legal and factual arguments in opposition thereto prior to the trial court ruling on the POs. Therefore, a remand is appropriate to allow Pew to do so.

Finally, there are questions about whether Pew filed a Supplemental Complaint or an Amended Complaint and whether, as Pew contends, the trial court erred in treating his second pleading as an Amended Complaint. While an "amended complaint" supplants an original complaint and renders that complaint inoperable, as Defendants argue, a "supplemental complaint" supplements an original complaint by adding claims and does not render that complaint inoperable. *See Township of Chester v. Stapleton*, 456 A.2d 673, 675 (Pa. Cmwlth. 1983) (explaining the difference between supplemental and amended complaints). Pennsylvania Rule of Civil Procedure 1033(a),[19] Pa.R.Civ.P. 1033(a), contemplates amending pleadings

---

[19] Rule 1033(a) provides:

**(Footnote continued on next page…)**

19

to encompass **additional** facts and causes of action based on events that occurred after the filing of an initial complaint.

Reviewing the two Complaints, Pew filed the Supplemental Complaint to **add claims** arising out of alleged wrongful conduct that occurred following his transfer to SCI-Rockview **to his existing Section 1983 action** with the trial court, which was based on events that occurred at SCI-Houtzdale. It does not appear that Pew was abandoning the claims in the Original Complaint, but attempting to include later arising claims that Pew maintained were related. Thus, that filing would be better characterized as a supplemental complaint that did not render the original complaint inoperable. *Township of Chester*, 456 A.2d at 675. Despite Pew's request to file a Supplemental Complaint, the trial court gave him leave to file an "Amended Complaint" and a new date for Defendants to file a responsive pleading. (Trial Court July 29, 2019 Order.) The trial court's characterization of Pew's filing, not as a Supplemental Complaint as he requested, but instead as an "Amended Complaint" appears to have also led Defendants to file POs only to the claims in the Supplemental Complaint.

Notwithstanding its own characterization of Pew's second pleading as an Amended Complaint in its July 29, 2019 Order, and the limited nature of Defendants' POs, the trial court's opinion reflects confusion regarding what Complaints and claims the trial court considered. The trial court referred to Pew's

A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.Civ.P. 1033(a).

20

second pleading as both a "Supplemental" and "Amended" Complaint throughout its opinion, and described some, but not all, of the factual allegations set forth in both Complaints. (Trial Court Op. at 1-2.) However, the trial court made no reference to Section 1983, the various constitutional provisions Pew alleged were violated, or Pew's statutory claims under the RLUIPA and RFPA, all of which were referenced in the Original Complaint and were related to at least some of the factual allegations described by the trial court. Further, the trial court applied Defendants' POs, which were filed only to the Supplemental Complaint, to the factual allegations that were contained in the Original Complaint to find that those allegations should be dismissed as "broad and baseless." (*Id.* at 6-7.) Given the confusion in how the trial court characterized and treated Pew's Supplemental Complaint, and which complaint or complaints Defendants should have filed responses to, a remand is necessary to provide them an opportunity to respond to all of Pew's allegations.

## III. CONCLUSION

In summary, the record and the parties' arguments raise numerous questions of when and what was properly served, and the trial court's opinion lacks clarity regarding what type of complaint was filed and what claims had to be addressed by Defendants in their responsive pleadings and the trial court. Under these circumstances, we vacate the trial court's April 21, 2021 Order and remand for the effectuation of proper service on all Defendants by Pew, for Defendants to be given the opportunity to file POs to the Original Complaint and the Supplemental Complaint (thereby allowing them to raise specific POs to the combined allegations),

and for Pew to be given an opportunity to respond to the POs, which he claims he was denied.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alfonso Percy Pew,           :
        Appellant    :
                     :
        v.           :   No. 530 C.D. 2020
                     :
Lt. John Doe, et al.        :

## O R D E R

**NOW**, March 14, 2022, the April 21, 2020 Order of the Court of Common Pleas of Clearfield County, entered in the above-captioned matter, is **VACATED**, and this matter is **REMANDED** for further proceedings in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge